IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER IWASKOW | : |
| | : |
| | : 3:15-cv-01934-ARC |
| v. | : |
| | : |
| JLJJ, INC. | : |
| | : |

## COLLECTIVE ACTION SETTLEMENT AGREEMENT

Named Plaintiff (as defined below) and Defendant (as defined below) STIPULATE and AGREE as follows:

**1.     Definitions.**  The following terms have the following meanings:

**"Action"** means the above-captioned class action lawsuit.

**"Agreement"** means this Collective Action Settlement Agreement.

**"Consent Form"** means the document attached as Exhibit C.

**"Court"** means the United States District Court for the Middle District of Pennsylvania.

**"Covered Period"** means the time period from March 1, 2014 until January 22, 2016.

**"Defendant"** means JLJJ, Inc.

**"Defense Counsel"** means Joyce, Carmody & Moran, P.C.

**"Named Plaintiff"** means Christopher Iwaskow.

**"Net Settlement Amount"** means $29,500.00 *minus* any Court-approved service award *minus* any Court-approved attorney's fees and expenses.

**"Notice Form"** means the document attached as Exhibit B.

**"Notice Package"** means an envelope bearing Plaintiffs' Counsels' return address and containing a Notice Form, a Consent Form, and a postage-paid return envelope addressed to Plaintiffs' Counsel.

...

- 2 -

**"Opt-In Deadline"** means forty-nine (49) calendar days after the Settlement Approval Date.

**"Opt-In Plaintiffs"** means those Potential Opt-In Plaintiffs who join this action by returning a timely Consent Form in accordance with the deadlines and procedures described in the Notice Form.

**"Payout Amount"** means individual amount listed for each Plaintiff on Exhibit A.

**"Plaintiffs"** means the Named Plaintiff and any Opt-In Plaintiffs.

**"Plaintiffs' Counsel"** means Winebrake & Santillo, LLC.

**"Potential Opt-In Plaintiffs"** means those individuals listed in Exhibit A.

**"Settlement"** means the terms and conditions described in this Agreement.

**"Settlement Approval Date"** means the date on which the Court enters an order on its docket approving the Settlement, pursuant to 29 U.S.C. § 216(b), as a fair, reasonable, and adequate resolution of a *bona fide* Fair Labor Standards Act dispute.

**2.** **Maximum Settlement Amount.** Defendant's total payment under this Settlement will not under any circumstances exceed $29,500.00, plus any employer-side taxes or withholdings associated with the Payout Amounts.

**3**. **Condition Precedent.** This Settlement is conditioned on the passage of the Settlement Approval Date.

**4**. **Release.** Upon the Approval Date, each Plaintiff (on behalf of himself and his heirs, spouses, administrators, executors, assigns, and representatives) releases, quitclaims, and forever discharges Joseph Trichilo, JLJJ, Inc., and any of its owners, proprietors, shareholders, parents, franchisors, partners, subsidiaries, affiliates, predecessors, agents, employees, successors, heirs, spouses, administrators, executors, assigns, representatives, or other persons or

entities acting on its behalf from all legal or equitable claims arising prior to January 22, 2016 for unpaid wages or overtime pay while employed at the City Market & Café under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment & Collection Law, 43 P.S. §§ 260.1, *et seq.*, or any other federal, state, or local statute, regulation, rule, or common law theory.

5. **Approval Motion.**  No later than seven (7) calendar days after the execution of this Agreement, Plaintiffs' Counsel will file with the Court an unopposed motion seeking entry of an order approving the Settlement as a fair, reasonable, and adequate resolution of a *bona fide* Fair Labor Standards Act dispute, approving the notice and opt-in forms and protocols described herein, and dismissing the Action with prejudice.

6. **Notice to Potential Opt-In Plaintiffs.**  No later than seven (7) calendar days after the execution of this Agreement, Defendant will provide to Plaintiffs' Counsel an Excel spreadsheet listing each Potential Opt-In Plaintiff's last known residential address and phone number.  No later than seven (7) calendar days after the Settlement Approval Date, Plaintiffs' Counsel will mail the Notice Package to each Potential Opt-In Plaintiff.  If the Postal Service returns any Notice Package with a forwarding address, Plaintiffs' Counsel will promptly re-mail the Notice Package to the forwarding address.  If the Postal Service returns any Notice Package without a forwarding address, Plaintiffs' Counsel will make all good faith and reasonable efforts to obtain the Potential Opt-In Plaintiff's current mailing address and will promptly re-mail the Notice Package to any updated address.  Defendant will work in good faith to provide Plaintiffs' Counsel with information (not including social security numbers) reasonably necessary to assist Plaintiffs' Counsel in locating Potential Opt-In Plaintiffs.

7. **Payment to Named Plaintiff.**  Within fourteen (14) calendar days after the

Settlement Approval Date, Defendant will deliver to Plaintiffs' Counsel a payroll check made payable to Named Plaintiff in the gross amount of his Payout Amount, from which Defendant will withhold all applicable federal, state, and local taxes and withholdings ordinarily borne by employees pursuant to Defendant's ordinary payroll practices.  In accordance with its normal business practices, Defendant will mail to Named Plaintiff an IRS W-2 Form reflecting this payment, utilizing an address to be provided by Plaintiff's Counsel.

8. **Payments to Opt-In Plaintiffs.**  Other than Named Plaintiff, only Opt-In Plaintiffs are covered by this Settlement and eligible to recover a Payout Amount.  Plaintiffs' Counsel are responsible for promptly filing with the Court within seven (7) calendar days after the Opt-In Deadline, any Consent Form returned by a Potential Opt-In Plaintiff by the Opt-In Deadline.  Within twenty-one (21) calendar days after the Opt-in Deadline, Defendant will deliver to Plaintiffs' Counsel payroll checks made payable to each Opt-In Plaintiff in the gross amount of his/her Payout Amount, from which Defendant will withhold all applicable federal, state, and local taxes and withholdings ordinarily borne by employees pursuant to Defendant's ordinary payroll practices.  Any check uncashed ninety (90) calendar days after its issuance will be void.  Defendant will mail to each Opt-In Plaintiff an IRS W-2 Form reflecting his/her individual payment.  The IRS W-2 Form will be mailed to the address listed on the Opt-In Plaintiff's Claim Form.

9. **Payment of Attorney's Fees and Expenses.**  Plaintiffs' Counsel will seek (and Defendant will not oppose) Court approval of fees and expenses of $10,384.00.  The Settlement is *not* contingent upon the Court's approval of this amount.  Within fourteen (14) calendar days after the Settlement Approval Date, Defendant will deliver to Plaintiffs' Counsel a non-payroll check made payable to Plaintiffs' Counsel and equaling any Court-approved fees and expenses.

In accordance with its normal business practices, Defendant will mail to Plaintiffs' Counsel an IRS 1099 Form reflecting this payment. Plaintiffs' Counsel is solely responsible for the payment of any taxes associated with this payment.

    **10.**    **Extra Service Award Payment to Named Plaintiff.** Plaintiffs' Counsel will seek (and Defendant will not oppose) Court approval of a service award to Named Plaintiff in the amount of $2,000.00. The Settlement is *not* contingent upon the Court's approval of this amount. Within fourteen (14) calendar days after the Settlement Approval Date, Defendant will deliver to Plaintiffs' Counsel a non-payroll check made payable to Named Plaintiff and equaling any Court-approved service award. In accordance with its normal business practices, Defendant will mail to Named Plaintiff an IRS 1099 Form reflecting this payment, utilizing an address to be provided by Plaintiff's Counsel. Named Plaintiff is solely responsible for the payment of any taxes associated with this payment.

    **11.**    **Entire Agreement.** This Agreement embodies the entire agreement between the Parties with controls over any prior communications regarding the Settlement. In entering into the Settlement, no Party has relied on any representations not explicitly contained in this Agreement.

    **12.**    **Successors.** The Settlement and this Agreement will inure to the benefit of and be binding upon the Parties' heirs and successors.

    **13.**    **No Admissions.** Nothing in this Agreement constitutes an admission or suggestion of liability by any Party. Defendant denies any wrongdoing and continues to assert that, absent this Settlement, they ultimately would prevail in the Action.

    **14.**    **Court Approval Not Obtained.** If the Court does not approve the Settlement, the Parties' litigation positions will return to the *status quo ante* and, for example, Defendant will

not have waived, compromised, or impacted any objections or defenses to Plaintiff's claims or the propriety of class-wide litigation.

15. **Duty to Defend.** The Parties and their counsel will support the Agreement against any legal challenge.

16. **Warranty of Authority.** Each signatory to this Agreement warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party that he/she purports to represent.

17. **Evidentiary Privilege.** This Agreement and all associated negotiations are covered by Federal Rule of Evidence 408.

18. **Applicable Law.** This Agreement is governed and construed pursuant to Pennsylvania law.

19. **Written Modifications.** This Agreement may not be modified except by a written agreement signed by all Parties and approved by the Court.

20. **Execution.** This Agreement may be executed in counterparts that, taken together, will constitute the entire Agreement.

IN WITNESS WHEREOF, and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

_____  4/24/16
Christopher Iwaskow          Date

_____  4/25/16
For Plaintiffs' Counsel      Date

_____  _____
For Defendant                Date

_____  _____
For Defense Counsel          Date

not have waived, compromised, or impacted any objections or defenses to Plaintiff's claims or the propriety of class-wide litigation.

15. **Duty to Defend.** The Parties and their counsel will support the Agreement against any legal challenge.

16. **Warranty of Authority.** Each signatory to this Agreement warrants and represents that he/she is competent and authorized to enter into this Agreement on behalf of the Party that he/she purports to represent.

17. **Evidentiary Privilege.** This Agreement and all associated negotiations are covered by Federal Rule of Evidence 408.

18. **Applicable Law.** This Agreement is governed and construed pursuant to Pennsylvania law.

19. **Written Modifications.** This Agreement may not be modified except by a written agreement signed by all Parties and approved by the Court.

20. **Execution.** This Agreement may be executed in counterparts that, taken together, will constitute the entire Agreement.

**IN WITNESS WHEREOF,** and intending to be legally bound, the Parties execute this Agreement on the dates indicated below:

_____          _____
Christopher Iwaskow                     Date

_____          _____
For Plaintiffs' Counsel                 Date

_Joseph Trichilo_                       6/2/16
For Defendant                           Date

_William P. Mansour_                    06/06/16
For Defense Counsel                     Date

- 6 -

# EXHIBIT A

| Name | Individual Payout Amount |
|---|---|
| Mary Bachman | $154.91 |
| Michael Castellano | $182.13 |
| Marc Destro | $170.50 |
| Christopher Dorsey | $20.00 |
| Timothy Fauls | $428.96 |
| Katheleen Fenton | $169.54 |
| Christopher Iwaskow | $10,027.07 |
| Michele Kime | $298.00 |
| Christopher Kupiec | $240.34 |
| Pennyann LaFlair | $251.49 |
| Randy LaFlair | $1,406.44 |
| Richard LaFlair | $538.83 |
| Gary Lebowitz | $20.00 |
| Nikki McLaughlin | $101.73 |
| Alexandria Michael | $83.70 |
| Sue Ogilvie | $213.51 |
| Terry Peffer | $1,676.23 |
| Samantha Pham | $25.73 |
| Gary Prospersi | $139.50 |
| Kyle Seymour | $85.25 |
| John Slockbower | $183.49 |
| Diane Tonsil | $185.61 |
| Marilyn Valentine | $124.00 |
| Patricia Warning | $389.05 |
| **TOTAL** | **$17,116.00** |

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER IWASKOW

        v.

JLJJ, INC.

3:15-cv-01934-ARC

TO:    [*INSERT CLASS MEMBER NAME*]

## COLLECTIVE ACTION SETTLEMENT NOTICE

**IF YOU RECEIVED THIS NOTICE IN THE MAIL IN AN ENVELOPE ADDRESSED TO YOU, YOU ARE COVERED BY THE SETTLEMENT OF THIS COLLECTIVE ACTION LAWSUIT.**

**THE UNITED STATES DISTRICT COURT HAS AUTHORIZED THIS NOTICE, WHICH SUMMARIZES THE TERMS OF THE SETTLEMENT AND EXPLAINS YOUR RIGHTS UNDER THE SETTLEMENT.**

**PLEASE READ THIS DOCUMENT CAREFULLY.**

| **1.    What is the Lawsuit about?** |
|---|

The United States District Court for the Middle District of Pennsylvania ("Court") presides over this Lawsuit, which was filed in October 2015 by Christopher Iwaskow ("Plaintiff") against Defendant JLJJ, Inc. ("JLJJ"). The Lawsuit is assigned to Federal Judge A. Richard Caputo, who sits in Wilkes Barre, PA.

Plaintiff brings the Lawsuit as a "collective action" on behalf of himself and other employees at the City Market & Café ("City Market") in Scranton, PA. The lawsuit challenges JLJJ's overtime pay practices during the time period between March 1, 2014 and January 22, 2016. This time period is referred to as the "***Relevant Period***."

During the Relevant Period, Plaintiff alleges that JLJJ failed to pay certain employees extra overtime compensation equal to one and one-half times their hourly pay for hours worked over 40 per week. In the Lawsuit, Plaintiff contends that this practice violated federal and state overtime laws. JLJJ disagrees and denies that it violated any overtime laws. The Court has never decided which side is correct.

| **2.    What is a settlement and why am I getting this Notice?** |
|---|

Plaintiff and JLJJ have agreed to settle the Lawsuit. A settlement is a compromise. It allows the

1

parties to avoid the costs and risks of further litigation and provides money to covered employees without significant delay.  In reaching this settlement, JLJJ does not admit violating any laws.

Judge Caputo has reviewed the settlement and decided that it is a fair and reasonable resolution of this dispute.

According to JLJJ's payroll records, you worked at the City Market during the Relevant Period and are eligible to join the Lawsuit.  If you join the settlement, you will receive a settlement payment.

This Notice describes the steps you must take to join the Lawsuit and receive a settlement payment.

### 3. What does the settlement provide?

Under the settlement, JLJJ will make a total payment of up to $29,500 to be distributed as follows:  **(i)** up to $17,116 will be shared by you and other eligible City Market employees who join the Lawsuit; **(ii)** $10,384 will be paid to Plaintiff's lawyers for their fees and expenses; and **(iii)** a $2,000 bonus will be paid to Plaintiff.

Here is how your individual share of the settlement payment is determined:

Under federal and state law, workers are entitled to receive extra overtime pay for hours worked over 40 per week.  This extra overtime pay is often referred to as "time and one-half" pay and is supposed to equal 150% of the employee's regular pay rate.  For example, an employee with a regular pay rate of $10/hour is supposed to receive $15/hour for overtime work.

JLJJ's payroll records indicate that, during the Relevant Period, you and other City Market employees did not receive extra "time and one-half" pay for your overtime work.  Instead, you were paid at your regular rate for overtime work.  Thus, under the Lawsuit, you are entitled to additional money for each overtime hour worked.  Because you already were paid at your regular pay rate for each overtime hour, the additional money owed for each overtime hour will equal 50% of your regular pay rate for each overtime hour worked.

Based on JLJJ's payroll records, you worked at total of [*insert*] overtime hours during the Relevant Time Period.  Based on these overtime hours, your unpaid overtime wages total $[insert] during the Relevant Period.

In addition, under the settlement, you will receive an additional payment equaling 55% of the above amount.  This brings your total settlement payment to **$[*insert Payout Amount*]**.

*[Note:  Prior to mailing, the above text will be amended for Potential Opt-In Plaintiffs Christopher Dorsey and Gary Lebowitz, both of whom are receiving a $20.00 minimum payment.]*

If you join the settlement, you can expect to receive to a payroll check in the gross amount of **$[*insert Payout Amount*]**.  Because this gross amount represents wages, it will be reduced to

2

account for all payroll and income taxes and withholdings ordinarily incurred by employees.

| **4.** | **How do I join the Lawsuit and receive a settlement payment?** |

If you want to receive a settlement payment, you must complete the enclosed "RELEASE AND CONSENT TO JOIN" form and return it to the law firm identified in Section 6 below.

The form must be returned in an envelope postmarked on or before [***insert date 49 calendar days after the Settlement Approval Date***].  A pre-addressed, postage-paid envelope is enclosed for your convenience.

You also may email the completed form to asantillo@winebrakelaw.com or fax the completed form to (215) 884-2492.  However, any email or fax must be sent before the [*insert date 49 calendar days after the Settlement Approval Date*] deadline.  Also, if you return the form by email or fax, please call (215) 884-2491 to make sure the form is received.

| **5.** | **What do I give up by joining the Lawsuit and receiving a settlement payment?** |

If you complete and return the RELEASE AND CONSENT TO JOIN form by following the instructions in Section 4 above, you will release and forever discharge JLJJ and any of its parents, franchisors, partners, subsidiaries, affiliates, predecessors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, representatives, or other persons or entities acting on its behalf from all legal or equitable claims arising prior to January 22, 2016 for unpaid wages or overtime pay while employed at the City Market & Café under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment & Collection Law, 43 P.S. §§ 260.1, *et seq.*, or any other federal, state, or local statute, regulation, rule, or common law theory.

If you currently are pursuing a legal claim against JLJJ or if you anticipate filing a future legal claim against JLJJ, you should consult with your attorney about this settlement and the impact this release may have on your current or anticipated legal claims.

| **6.** | **Who are my lawyers and how are they paid?** |

You are free to consult with or retain any lawyer of your choosing regarding the Lawsuit or the settlement.

If you complete and return the RELEASE AND CONSENT TO JOIN form and do not retain your own lawyer, you automatically will be represented by the law firm of **Winebrake & Santillo, LLC**, 715 Twining Road, Suite 211, Dresher, PA 19025 (Phone: 215-884-2491; Website: www.winebrakelaw.com).

Lawyers from the Winebrake & Santillo firm are available to answer your questions in strict confidence.  If you call the firm, please identify yourself as an employee covered by the "JLJJ Overtime Lawsuit" and ask to speak with one of the lawyers working on the case.

As stated in Section 3 above, the Court has approved an award of $10,384 in legal fees and expenses to the Winebrake & Santillo firm.  After reductions for expenses, the legal fee equals 33% of the total settlement fund.

You will *not* pay any legal fees out of your individual settlement payment described in Section 3 above.

### 7. What if I do not want to participate in the settlement?

You are not required to participate in the settlement.  If you do nothing in response to this Notice, you will not be covered by the settlement and will not release any legal claims against JLJJ.

### 8. How do I obtain more information?

This Notice summarizes the most important aspects of the proposed settlement.  You can obtain further information by calling the Winebrake & Santillo firm at (215) 884-2491.


Dated:  [*insert*]                              Approved:       Hon. A Richard Caputo
                                                                United States District Court
                                                                Middle District of Pennsylvania

# Exhibit C

# **RELEASE AND CONSENT TO JOIN**

*Christopher Iwaskow, et al. v. JLJJ, Inc., 3:15-cv-01934-ARC*
**United States District Court, Middle District of Pennsylvania**

As instructed in Section 4 of the accompanying "Collective Action Settlement Notice," please complete this Form and mail it (preferably in the enclosed envelope) so that it is postmarked no later than [*insert date 49 calendar days after the Settlement Approval Date*] to:

**JLJJ, Inc. Overtime Lawsuit
c/o Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025**

**Your Name:** _____
**Print CLEARLY**

**Street/P.O. Box:** _____

**City/State/Zip:** _____

**Primary Phone:** _____

**Email Address:** _____

**Please read the following carefully.** You should contact the law firm of Winebrake & Santillo, LLC (215-884-2491) or any other attorney of your choice if you have any questions.

1. I have read the Collective Action Settlement Notice ("Notice") addressed to me and summarizing the settlement of this Lawsuit.

2. I consent and agree, pursuant to 29 U.S.C. § 216(b), to become a party to this Lawsuit and to be bound by all Court orders relating to the Lawsuit and the settlement of the Lawsuit.

3. I understand that the Lawsuit has been settled. I desire to fully participate in the settlement and to receive my settlement payment in the amount as described in Section 3 of the Notice.

4. I understand that, by signing and returning this form, I release and forever discharge JLJJ, Inc. and any of its parents, franchisors, partners, subsidiaries, affiliates, predecessors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, representatives, or other persons or entities acting on its behalf from all legal or equitable claims arising prior to January 22, 2016 for unpaid wages or overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment & Collection Law, 43 P.S. §§ 260.1, *et seq.*, or any other federal, state, or local statute, regulation, rule, or common law theory.

_____    _____
**Date**                                                                     **Signature**